### THE WILLIAM E. FERGUSON.

(District Court, S. D. New York. March 18, 1901.)

1. COLLISION—STEAMER AT PIER AND TOW.

An ocean steamer was attempting to make her dock in the East river in the ebb tide. The bow of the steamer was made fast to the upper corner of pier 29, her stern swinging down, and just clearing the upper corner of pier 28. Her stern was from 15 to 20 feet from the pier. A tug with a tow was coming up the river, and the tow struck the steamer on her port bow. The tug was not navigating in mid-stream, as the statute required, though nothing prevented her going in mid-river. She made no serious attempt to go to the right, as a tug with a tow just behind her did, though there was abundant time and opportunity for her to do so; nor did she stop and back in time, as she might have done had she not wished to go out into the river in her proper place. *Held*, that the collision was the fault of the tug.

2. SAME—CONTRIBUTORY NEGLIGENCE.

As the steamer had no reason to apprehend that vessels coming up from below against the tide, in plain sight of her, would run into her without cause, and until a few moments before collision had a right to assume that the tug would stop her headway, or go to the eastward of her, it was not contributory negligence to fail to reverse, which would have involved running into the pier with greater damage, and brought the bow of the steamer against the tow with greater force.

In Admiralty.

James J. Macklin, for libelant.
Wing, Putnam & Burlingham, for claimant.

BROWN, District Judge. At about 8:30 a. m. of March 28, 1900, while the steamer Adler was endeavoring to make her dock in the slip between piers 28 and 29 East river, in the ebb tide, a float coming up river in tow of the steam tug Ferguson and on her starboard side, ran into the Adler, striking her on the starboard bow, about 30 feet from the stem, doing damage for which the above libel was filed.

. .The steamer Adler is of moderate size, being only 240 feet long; she had made the end of pier 29, which is the Brooklyn Bridge abutment, and was intending to swing her stern around so as to back into the slip along the southerly side of pier 29; but in the first attempt to do so, the tide proved to be so strong that the lines were judged insufficient to bring her into proper position, so that after she had swung around so as to head nearly across the river, it became necessary to let go her stern, which was allowed to sag down and out for the purpose of making another attempt.

. A line from her bow was made fast to a spile on the upper corner of pier 29, which was about 30 feet longer than the piers below. This line was accordingly held, and her stern swinging down and out just cleared the upper corner of pier 28. To prevent the single bowline from breaking before the vessel got straightened down preparatory to another move to the end of pier 29, it was necessary to slacken the bowline in order to lessen the strain upon it, the object being to get the Adler swung around nearly head up river, when with her own steam and help of the tug Lohman, she could again make pier 29. While in this operation and when about two-thirds swung around up river, and when her stern was about abreast of pier 27, the car float, in tow of the Ferguson, coming up river ran into her as above stated.

For the claimant it is contended that the Adler had moved out into the river away from the piers, so that at the time of collision her stern was 150 feet clear of pier 27, and that the Ferguson was from 350 to 400 feet outside of the piers. The libelant's witnesses, with one exception, controvert this. It is so improbable that I must regard the claimant's witnesses as mistaken on that point. There was no possible reason for the Adler's moving ahead out into the river, but every reason to the contrary. Her witnesses deny that she did so; and except by moving ahead, it is impossible that her stern could have been far from the piers at collision. The witness Snyder was in the best position to observe and he says her stern was but 15 or 20 feet from the piers. The tide there, as the evidence shows, is true; and in dropping down river somewhat, while her bow was partially held by the bowline running to the end of the longer pier, the stern, as one of the most competent of defendant's witnesses testifies, could not have been carried out any such distance as the defendant alleges, unless she was moved ahead by her own engines, which I am satisfied was not done.

I think the blame of the collision must therefore rest wholly upon the Ferguson. For the Adler was in plain view. Her purpose was understood. It was seen that she had missed in her first attempt, and was dropping down river more slowly than the tide in preparation for a second attempt; and the Ferguson is chargeable with these three plain faults: (1) She was not navigating in mid-stream, as the statute required; but in water especially belonging to the use of vessels trying to make their slips. Nothing prevented her going in mid-river. (2) She made no serious attempt to get out of the way of the Adler by going to the right, as the tug Columbia with a tow did just behind her, when there was abundant time and opportunity for her to do so. (3) She did not stop and back in time, as she might

also have done, had she not wished to go out into the river in her proper place. The collision would have been avoided even without her coming to a full stop in the water; since the Adler by the constant strain upon her bowline was moving down river more slowly than the tide.

These faults of No. 1 are so plain, that she alone must be held answerable for the collision unless contributory fault of the Adler is clearly established, which I think is not done. The City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84. The Adler was making proper maneuvers in water where she was entitled to maneuver to reach her dock. She had no reason to apprehend that vessels coming up from below against the tide, near the shore and in plain sight of her, would run into her without cause or excuse. If the Adler was seen 500 feet off, that was enough for the Ferguson to clear. Up to a few moments before collision the Adler had a right to assume that the Ferguson would either stop her headway, or else go to the eastward of her. It was not until the Ferguson had approached near that the Adler could assume that the Ferguson would not avoid her by stopping or going outside of her. To move forward would then have been useless; she did reverse for a moment; but that, if continued, would have involved running into the pier with probably greater damage, and would also have brought the Adler's bow more out and down river, and against the Ferguson's tow with greater force. To have stopped surging the bowline would probably have parted it, and have let the Adler come down with the tide faster, and brought on collision sooner. The pilot of the Adler was not called on to take extraordinary risks. He was bound to exercise reasonable nautical judgment and skill in the situation brought about by the Ferguson's faults, and no more. From the time it could be known that the Ferguson would neither stop nor clear the Adler, I cannot perceive any fault, or even any certain error, in the management of the Adler.

Decree for the libelant with costs, and an order of reference to ascertain the damages, if not agreed upon.